IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BHI ENERGY I POWER | § | |
| SERVICES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1981-L-BN |
| | § | |
| KVP HOLDINGS, LLC, | § | |
| KVP ENERGY SERVICES, LLC, | § | |
| POWER STANDARD LLC f/k/a KVP | § | |
| POWER LLC, DUSTIN COBLE, | § | |
| WELLBORN "ROSS" GLOVER, | § | |
| ROY GLOVER, and SHELBY | § | |
| WALKER, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff BHI Energy I Power Services, LLC has filed a Motion for Sanctions for Spoliation of Evidence, *see* Dkt. No. 166 (the "Spoliation Sanctions Motion"), under Federal Rule of Civil Procedure 37, asking the Court to impose sanctions against Defendants KVP Energy Services, LLC, KVP Holdings, LLC Power Standard, LLC (collectively 'KV'), Dustin Coble, Wellborn "Ross" Glover, Roy Glover, and Shelby Walker (collectively, the 'Defendants') for their spoliation of relevant information" in this case, Dkt. No. 166 at 1.

As remedies for Defendants' alleged spoliation, BHI asks the Court to

1. "strike Defendants' defenses in this action and enter judgment in BHI's favor [on all Counts (Counts I-VII)] with all of BHI's reasonable fees and costs taxed against Defendants, jointly and severally"; or,

-1-

2.  alternatively, "order an adverse inference instruction as to BHI's tortious interference, misappropriation of trade secrets, Computer Fraud and Abuse Act, breach of fiduciary duty and duty of loyalty, unfair competition, conspiracy, and conversion claims" and "order Defendants to pay all costs associated with the discovery in this case, as well as the attorneys' fees and costs associated with BHI's discovery efforts."

Dkt. No. 167 at 15; *accord* Dkt. No. 166 at 1-2, 5-7 of 7.

Defendants filed a response, *see* Dkt. No. 174, and BHI filed a reply, *see* Dkt. No. 177.

For the reasons explained below, the Court denies Plaintiff BHI Energy I Power Services, LLC's Motion for Sanctions for Spoliation of Evidence [Dkt. No. 166].

## Background

The parties and the Court are familiar with the background of this case, so the Court will not repeat it here. *See, e.g.*, Dkt. No. 48.

In the Spoliation Sanctions Motion, BHI contends that,

[s]imilar to Defendants KVP Energy Services LLC, KVP Holdings LLC, Power Standard LLC (collectively "KV"), Dustin Coble, Ross Glover, Roy Glover, and Shelby Walker's nefarious conduct giving rise to this Action, Defendants have failed to conduct a thorough search for relevant information responsive to BHI's discovery requests, and have, instead, deleted and destroyed relevant information. KV's witnesses have repeatedly testified that their personal electronic devices were not preserved or searched for relevant information concerning this Action. *See e.g.*, Coble Dep. 80:12-15, 81:1-15 [APP009-10]. By way of example, KV's President, Cory Haynes ("Haynes"), testified that he destroyed text messages to the named Defendants and others a few weeks before his November 2023 deposition when resetting his phone to factory settings and providing it to his son. *See* Haynes Dep. 62:1 - 63:15 [APP018 - 19]. Importantly, despite having knowledge of this lawsuit and Defendants'

receipt of BHI's preservation notices, Defendants never secured Haynes's phone or searched it for text messages to the individual Defendants that Haynes admits were on his phone. Therefore, not only have the Defendants failed to meet their discovery obligations, but the Defendants have also destroyed relevant evidence despite BHI's preservation letters to Defendants at the outset of this Action and receipt of this lawsuit. *See* July 22, 2022, Preservation Letters [APP031-49]; *see also generally Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) ("trial court decided to remedy what it perceived to be [] misconduct by giving a spoliation instruction"). Defendants' conduct clearly suggests Defendants' intent to conceal information relevant to BHI's claims, preventing BHI from discovering and presenting such evidence to prove or support its claims and fully assess its damages.

Dkt. No. 167 at 1-2.

According to BHI,

Defendants destroyed evidence after receipt of BHI's preservation notices, after BHI filed the instant lawsuit, and after assuring BHI that they had produced all relevant information. Clearly, Defendants destroyed the evidence in this case in bad faith. This evidence cannot be restored or replaced. ….

Here, Defendants had an absolute obligation to preserve the evidence in question at the time it was destroyed. On or around July 22, 2022, BHI put the individual Defendants Shelby Walker, Roy Glover, Ross Glover, Dustin Coble, and the corporate Defendants on notice of their obligation to preserve potential evidence related to this action. See July 22, 2022, Preservation Letters [APP031-49]. BHI filed its Complaint on September 6, 2022. *See* Dkt. 1. The Defendants' duty to preserve the evidence was self-evident. Nevertheless, Defendants did not take appropriate steps to preserve all evidence, including text messages, even though the lawsuit clearly advances that the Defendants' conducted illegal actions and communications in furtherance of their conspiracy via text messages. Yet, Defendants took no steps to preserve all evidence in this case. Rather, it took affirmative action to destroy it.

Dkt. No. 167 at 2-3, 4-5.

As support, BHI explains that "Defendants admit to deleting text messages and other electronic information":

Cory Haynes, President of Defendant KVP Energy Services LLC, testified that he had a laptop and cell phone, neither of which were searched in connection with this case. *See* Haynes Dep. 60:3-4, 60:13-20 [APP016]. Haynes also testified that he destroyed any evidence from his cell phone, including any text messages related to the individual Defendants, when he restored the phone to its factory settings just a "couple weeks" before his deposition on November 20, 2023. *See* Haynes Dep. 61:23-62:14 [APP017 - 18]. Similarly, Dustin Coble, a named Defendant, testified that his phone was never searched for responsive communications, and in fact, he had relevant text messages on his phone that he deleted. *See* Coble Dep. 80:12-15, 81:1-15 [APP009 - 10]. Shelby Walker, another named Defendant, testified that any information on his personal phone is now gone. *See* Walker Dep. 120:2-3 [APP056].

[T]hese devices were not fully searched or imaged, and the information contained therein was reasonably relevant to the case. The Defendants' deletion of this information – after receipt of BHI's preservation correspondence and after commencement of this case – was done with clear intent to conceal and/or destroy information pertaining to BHI's claims.

....

Defendants' ill motive is further evidenced by repeated admissions – from the Defendants themselves – that their emails, texts, and devices were not searched for relevant evidence in this action. In addition to their general duty to preserve relevant evidence, BHI reasonably sought communications from both the Corporate Defendants and the Individual Defendants and information pertaining to any BHI information that Defendants retained during discovery. *See* BHI's Requests for Production [APP063 - 83]4. Defendants, however, have not conducted a reasonable search for these documents and information.

On November 14, 2023, Bryan Hoffman, the CEO of KVP Energy Services, testified under oath that he maintains a laptop, cell phone, iPad, and business email address, and that he did not turn over his devices to be searched or preserved nor was his email searched in connection with this case. *See* Hoffman Dep. 68:3-69:23, 72:9-20 [APP086 - 87, 90]. Cory Haynes, KV's former President, also testified that his electronic devices were not searched and that a few weeks prior to his deposition, Haynes reset his phone to factory settings, thereby deleting evidence. *See* Haynes Dep. 60:1-63:14 [APP016 - 19]. Similarly, Defendant Dustin Coble testified that his phone was never searched for responsive communications. *See* Coble Dep. 80:2-3, 80:12-15 [APP009].

Welborn "Ross" Glover, a named Defendant, also testified that he does not recall searching his personal email or personal computer to locate any BHI information. *See* W. Glover Dep. 124:4-7, 126:5-15 [APP099 - 100]. Ross Glover also testified that he does not recall

searching his cell phone for anything that came from other BHI employees. *See* W. Glover Dep. 127:3-7 [APP101].

Darrell Hallmark also admits that he did not search his computer for documents concerning this matter. *See* Hallmark Dep. 145:4-7 [APP106]. Defendant Shelby Walker testified that while his counsel searched his personal emails, he did not search his personal devices or home for any BHI information or documents. *See* Walker Dep.163:2-11, 185:10-86:3 [APP057 - 59].

Kristy Trieu, former Vice President of Human Resources for KVP Energy Services, testified on November 13, 2023, describing how she was instructed to search for documents pertaining to this matter. *See* Trieu Dep 18:6, 119:4-120:11 [APP111 - 113]. She testified that she searched her emails for emails going to "these employees" and instructed her team to locate and produce to Defendants' counsel anything that may have been saved in the employee files and search for emails in the HR email inbox. *See* Trieu Dep. 119:15-120:6 [APP112 - 113]. Ms. Trieu only recalls searching for "Ben Campbell" in her inbox and could not confirm whether the email inboxes of other Defendants and former BHI employees were searched, or if she conducted a search of the HR email inbox for the named Defendants. *See* Trieu Dep. 121:6-122:18 [APP114 - 115].

Based on this testimony, it is clear that the Defendants engaged in an insufficient search for information. The insufficient search as well as the testimony that evidence has since been deleted are unacceptable and establishes bad faith. *See e.g.*, *Victor Stanley*, 269 F.R.D. at 531 (finding bad faith when spoliating party set out to delete, destroy, or hide files evidenced by failing to implement a litigation hold, failure to preserve ESI and devices, deletion of individual files, overwriting files, and utilizing software to delete files). It is a natural conclusion that Defendants had no intent to comply with its preservation and production obligations.

…. There can be no doubt that the evidence in question was relevant to BHI's claims and that BHI has been prejudiced by Defendants' intentional concealment and destruction relevant information. The Defendants' own witnesses' testimony supports that the destroyed and/or concealed information is relevant to and would have supported BHI's claims. ….

Bryan Hoffman and Cory Haynes's communications with the individual Defendants are clearly relevant to BHI's claims of misappropriation (Counts IV and V), unfair competition (Count IX), breach of fiduciary duty (Count VII), tortious interference (Counts I, II, III), and conspiracy (Counts X, XI, XII). For example, Bryan Hoffman testified that he uses his iPad for work emails, and he specifically emails with Hallmark and Campbell. *See* Hoffman Dep. 69:22-70:1, 71:3-20

[APP087 - 89]. He also testified that he sends text messages to employees, including Ben Campbell, Ross Glover, and Darrell Hallmark. *See* Hoffman Dep. 70:7-17 [APP088]. Similarly, Cory Haynes testified that he used his personal cell phone to talk and text with Ben Campbell, Darrell Hallmark, Ross Glover, and Roy Glover. *See* Haynes Dep. 62:15-63:2, 63:11-12 [APP018 - 19]. Haynes also emailed Campbell, Hallmark, Ross Glover, Roy Glover. *See* Haynes Dep. 63:3-10 [APP019].

The evidence establishes that Haynes received BHI's trade secrets on his electronic devices and communicated the scheme to have BHI's executives breach their fiduciary duties via his text messages with the individual Defendants, Campbell, Hallmark, and others. The evidence also establishes that Hoffman and Haynes had knowledge of and were involved in the recruitment of BHI employees to work at KV on Oncor projects. On Monday, July 18, 2022, Kristy Trieu initiated an email chain to coordinate with Ben Campbell to expedite Oncor onboarding of approximately sixty (60) employees – almost all of which came from BHI – so that the employees could start work the following Monday. *See* Haynes Dep., Ex. 46, KVP002665-2670 [APP024 - 29]. Both Hoffman and Haynes were copied on these emails. *See id.*

Hoffman and Haynes were also directly involved, along with Ben Campbell via text message and electronic communications, in negotiating and approving a sign-on bonus for Ross Glover. Moreover, in May 2022, Hallmark sent himself documents from BHI concerning bidding for the City of Garland. *See* Haynes Dep., Ex. 34, Hallmark000216-217 [APP022 - 23]. Then within 20 minutes of sending the City of Garland documents to himself, Hallmark reached out directly to KV's President, Haynes, to inquire if Power Standard was bidding on the project. *See id.* Therefore, emails between Hoffman and/or Haynes and Campbell, Hallmark, or the individual Defendants are clearly relevant to BHI's claims.

,,,,
Dustin Coble's communications are clearly relevant to BHI's claims of unfair competition (Count IX), breach of fiduciary duty (Count VIII), tortious interference (Counts I, II), conspiracy (Counts X, XI, XII), and conversion (Count XIII). Dustin Coble testified that Ben Campbell texted him an application for KV Power, *see* Coble Dep. 39:16-40:2[APP003 - 4], and that he no longer has that message – which is directly relevant to this case – because he deletes his text messages, *see* Coble Dep. 40:3-13 [APP004]. Coble also testified that he received his KV offer letter via email or text message, but "probably" no longer has that communication either. *See* Coble Dep. 72:23-73:5 [APP007 - 8]. Dustin Coble also admitted that Ross Glover asked him to text James Hensley about "snitching" to Brian Smith. *See* Coble Dep. 54:10-55:8 [APP005 - 6]. Coble also testified that he deleted the text message of him

getting fired from BHI. *See* Coble Dep. 83:15-17 [APP011]. That is at least three text message that are known to be deleted that are directly relevant to this lawsuit.

....

Shelby Walker's communications, as well as those from the admitted "Secret Group Text" are also relevant to BHI's claims of unfair competition (Count IX), breach of fiduciary duty (Count VIII), tortious interference (Counts I, II), conspiracy (Counts X, XI, XII), and conversion (Count XIII). Similarly, Shelby Walker admits there were secret group text messages among BHI foremen. *See* Walker Dep. 116:19-117:6 [APP052 - 53]. Walker also claims Ken Loynes sent a message to a group of BHI employees – that no one has produced – firing everyone within the group. *See* Walker Dep. 117:1-3[APP053]. Within this secret group text message, Walker testifies that the foremen discussed leaving BHI, submitting applications with KV, and providing uniform/equipment sizes for KV. *See* Walker Dep. 117:4-16, 118:9-14 [APP053 - 54]. Walker also admits there was another group message between him, Ross, and Roy Glover in which Ross inquired about Aaron Haygood informing Mr. Loynes about the other, larger, secret group chat. *See* Walker Dep. 119:10-22 [APP055]. Walker did not maintain the messages. *See* Walker Dep. 120:2-3 [APP056]. All of these messages, as well as others contained within these secret group chats, are directly relevant to BHI's claims.

Dkt. No. 167 at 3, 6-12 (cleaned up).

BHI argues that

[i]t is difficult to believe that the systematic, multiple, calculated efforts to destroy, conceal or impair evidence do not justify sanctions. The Court is not addressing a random incident.

Several witnesses – including the individual Defendants and representatives of the corporate Defendants – testified that their devices were not searched, there is relevant information on those devices, and that information has since been destroyed. What has been done was comprehensive, done knowingly, and with improper purpose.

Dkt. No. 167 at 14.

Accordingly, pursuant to Federal Rule 37 and this Court's inherent powers, BHI respectfully requests that the Court strike Defendants' defenses in this action and enter judgment in BHI's favor with all reasonable fees and costs taxed against Defendants, jointly and severally. Alternatively, BHI requests that this Court order an adverse

inference instruction as to BHI's tortious interference, misappropriation of trade secrets, Computer Fraud and Abuse Act, breach of fiduciary duty and duty of loyalty, unfair competition, conspiracy, and coning text messages or claims due to the severe prejudice BHI has suffered as a direct result of Defendants' intentional destruction of evidence, including significantly impairing BHI's ability to prove these claims and fully assess its damages. Additionally, BHI respectfully requests that this Court order Defendants to pay all costs associated with the discovery in this case, as well as the attorneys' fees and costs associated with BHI's discovery efforts. These are the only reasonable methods in which to punish such egregious conduct, to deter Defendants and future litigants from engaging in similar conduct and to fully mitigate the prejudice caused to BHI and the judicial process.

Dkt. No. 167 at 14-15.

In response, Defendants argue that BHI's Spoliation Sanctions Motion

is the definition of frivolous. BHI is requesting death-penalty sanctions by claiming that Defendants spoliated evidence, yet the evidence BHI claims was spoliated includes documents that Defendants produced to BHI and communications with BHI's own employees. BHI has (or should have) these documents and knows they were not spoliated unless BHI has failed to preserve the very documents it claims Defendants should have preserved. And therein lies one of the central problems with BHI's Motion: while requesting death-penalty sanctions based on allegations that three individuals did not fully preserve their text messages, BHI apparently did not image or preserve text messages from a single BHI employee. BHI's Motion is nothing more than BHI focusing on a speck of sawdust in another's eye while ignoring the plank in its own eye.

In any event, all of the communications that BHI claims were lost or deleted should be in BHI's possession and/or have been fully preserved, as copies from other parties to such communications still exist. BHI is unable to show that a single document relevant to this action has been lost or deleted, and there is thus no evidence of spoliation. There is also no evidence of bad faith on the part of Defendants in attempting to deprive BHI from any evidence, which is necessary to establish spoliation. If anything has deprived BHI of information, it is BHI's own preservation failures, not any actions by Defendants.

Perhaps recognizing there has been no deletion or loss of evidence, BHI also claims that death-penalty sanctions should be granted based on BHI's allegations that Defendants did not adequately search emails of certain custodians. Defendants highly dispute these

allegations and contend they performed a reasonably diligent search for documents responsive to BHI's requests for production. But regardless, BHI's complaints should have been raised in a motion to compel before the November 9, 2023, motion to compel deadline – not in a spoliation motion seeking death-penalty sanctions or an adverse inference. BHI cannot attempt to backdoor an untimely motion to compel by characterizing it as a motion for spoliation.

Dkt. No. 174-1 at 1-2 (cleaned up).

As factual background, Defendants explain that

BHI filed this suit against the Corporate Defendants and four powerline maintenance workers, the Individual Defendants, in September 2022. *See* ECF No. 1. That same month, Defendants began to work diligently to identify, preserve, and collect potentially relevant documents. In September 2023, Defendants engaged a third-party vendor, Digital Mountain, to collect the personal emails of each of the Individual Defendants and of two non-party individuals who are named in the Complaint and who worked for Power Standard: Ben Campbell and Darrell Hallmark. *See* APP-0178 at ¶ 4 (Cooper Declaration). Digital Mountain used the username and passwords provided by the owners of each of these email accounts to collect and preserve all emails from those accounts. *See* id. at APP-0179 ¶ 5. Digital Mountain also made images of personal hard drives from Campbell and Ross Glover that may have had potentially relevant documents. *See id.* at APP-0179 ¶ 6.

In January 2023, Counsel for Defendants and the Corporate Defendants worked with a different vendor, Simpatico, who handles the Corporate Defendants' IT infrastructure, to preserve and collect the company emails of the Individual Defendants, Campbell, and Hallmark. *See id.* at APP-0179 ¶ 7. Similar to their personal emails, Defendants collected and preserved all of the emails from the Individual Defendants, Campbell, and Hallmark's company email accounts. *See id.* at APP-0179 ¶ 8. Once these emails were collected, Defendants' counsel used term searches to review the personal and company emails that were collected as well as the hard drives from Campbell and Ross Glover, and Defendants produced the responsive documents to BHI. *See id.* Defendants produced these responsive documents to BHI in on February 10 and March 2, 2023. *See id.* at APP-0179 ¶ 9. When producing these documents, Defendants also produced the metadata for each document, which generally included, among other things, the custodian, file name, file type, and date of each document. *See id.* at APP-0179 ¶ 10.

Also in March 2023, Defendants again engaged Digital Mountain to take possession of, image, and preserve the cellphones of Ross Glover,

Walker, Campbell, and Hallmark. *See id.* at APP-0180 ¶ 14. Coble had already left his employment at Power Standard by that time, and due to counsel then having an incorrect phone number for Coble, Defendants' counsel were not able to obtain Coble's cellphone for Digital Mountain to image. *See id.* at APP-0180 ¶ 16. Roy Glover was traveling when the other cellphones were imaged and was unable to have his cellphone imaged with the others. *See id.* at APP-0180 ¶ 17. Roy Glover has since confirmed that he still has all of his text messages from 2022 and that he has not deleted any text messages from 2022. *See* APP-002 (Roy Glover Declaration).

By the time Defendants imaged and preserved these cellphones, Defendants had already expended substantial time, expense, and effort in reviewing and producing emails and other documents they collected. In contrast, even though BHI brought this case, BHI did not seem interested in expending any effort to fulfill its discovery obligations. While Defendants (or nonparties Campbell and Hallmark) produced essentially all emails and other responsive documents by March 2, 2023, totaling over 6,800 pages, BHI did not produce a single document until April 27, 2023, and even then, BHI produced only 47 pages without any metadata. *See* APP-0179 at ¶¶ 11-12 (Cooper Declaration). Indeed, by mid-July, BHI had produced barely 300 pages of documents, and BHI produced all documents without any metadata in a single pdf without tabbing or separations but instead that mashes together all of the documents so that it is difficult to tell where one document ends, and another begins. *See id.* at APP-0180 at ¶ 13.

Not wanting to needlessly incur additional expenses when BHI— the Plaintiff who brought this case – clearly had no intention of doing the same and when BHI had not indicated that Defendants' productions were incomplete or lacking, Defendants did not spend additional time reviewing the information it collected from the cellphones of Ross Glover, Walker, Campbell, or Hallmark. Instead, Defendants made sure the data from the cellphones was preserved in the event it was needed for this action. BHI, however, never sought to confer with Defendants regarding production of text messages or other cellphone data before the close of discovery.

Instead, after the close of discovery and after the motion to compel deadline had passed, BHI for the first time complained that Defendants should have produced text messages from certain employees, and BHI filed a motion for leave to file an untimely motion to compel. *See* ECF No. 101. The Court denied BHI's motion for leave on the basis that BHI "fail[ed] in part to show that it could not have met the November 9 deadline or could not have included in the motion to compel that it did file on the November 9 deadline some the requests that it now raises." ECF No. 163.

....

While Defendants have imaged and preserved the cellphones from numerous individuals, BHI's counsel has admitted that BHI did not collect, preserve, or review text messages or cellphone data from a single BHI employee. During a meet and confer on November 28, 2023, Defendants' counsel asked BHI's counsel about which BHI employees' cellphones BHI imaged, preserved, and reviewed. *See* APP-0164 at ¶ 4 (Lee Declaration). When asked whether BHI imaged, preserved, or reviewed the cellphone of BHI employee Ronald Davis, BHI's counsel stated that BHI did not do so. *See id.* at ¶ 5. Defendants' counsel then informed BHI's counsel that Defendants would assume that BHI did not image, preserve, or review the cellphone of any of its employees unless BHI's counsel affirmatively told Defendants' counsel that a specific employee's cellphone was imaged, preserved, and reviewed. *See id.* at ¶ 7. BHI's counsel said that a report by FTI Consulting, which BHI did not produce until after the close of discovery, should list the individuals whose cellphones BHI imaged, preserved, and reviewed. See id. at ¶ 6. The FTI Consulting report, however, does not identify a single individual whose cellphone was imaged, preserved, or reviewed. *See* ECF No. 123 at APP285-293. Defendants' counsel followed up with BHI's counsel that same day via email to again ask about BHI's preservation of employee cellphones, again informed BHI that if BHI did not affirmatively represent that a specific individual's cellphone was imaged, preserved, and reviewed, then Defendants would assume it was not. See APP-0173 (Lee Declaration). BHI's counsel responded by sending Defendants a list of names that BHI's counsel said are the individuals whose information FTI Consulting collected and preserved. See id. at APP-0171-172. This list appears to only include individuals who left BHI's employment in mid-July 2022 and does not include a single BHI employee who remained at BHI in July 2022. *Compare id.* at APP-0171-172, *with* APP-0034-37 (BHI's interrogatory response listing individuals who BHI alleges left BHI). Defendants' counsel followed up by asking if BHI imaged, preserved, or reviewed the cellphones from any of the BHI employees who BHI identified in its initial disclosures or whose declarations BHI used to support its case. *See* APP-0169-170 (Lee Declaration). These individuals include:

1. Ken Loynes
2. Juanita Biasini
3. Andrew McCallum
4. Brady McDonald
5. Aaron Haygood
6. Emily Franko
7. James Hensley
8. Jerrod Davis

9. Johnnie Kirkwood
10. Ramon Archuleta
11. Rene Guerrero
12. Brian Smith
13. Ronald Davis

*See id.* at 0170. Again, Defendants' counsel informed BHI's counsel that because BHI's list from FTI does not include any of these individuals, if BHI's counsel does not affirmatively represent that BHI imaged, preserved, or reviewed the cellphones from these individuals, Defendants will assume that BHI did not. *See id.* at 0170. BHI's counsel, however, refused to identify any BHI employees whose cellphone BHI imaged and preserved, including the individuals about whom Defendants' counsel asked. *See id.* at 0169. In total, Defendants' counsel asked BHI's counsel four separate times to provide a list of BHI employees whose cellphones BHI imaged, preserved, and reviewed, and to date, BHI's counsel has refused to provide the name of a single employee whose cellphone BHI imaged, preserved, or reviewed. It is therefore clear that BHI has not imaged, preserved, or reviewed a single cellphone from any of its employees who were still at BHI in July 2022.

It is also clear that the BHI employee cellphones that BHI did not preserve contained relevant text messages that were responsive to Defendants' discovery requests. *See* APP-0105-106 (Biasini Depo. at 24:19-25:1) (testifying that "Mr. Loynes [BHI's President4] shared some of the text messages" about what was happening when employees were leaving BHI in July 2022); *id.* at 34:2-9 [APP-0107] (testifying that witness had knowledge of what was happening in July 2022 because of "text messages" shown by Ken Loynes); *id.* at 55:19-22 [APP-0108] (testifying that witness texted "with Mr. Loynes regarding what was occurring in the Texas market in July of 2022"); APP-0115-116 (McDonald Depo. at 50:10-51:22) (testifying about text messages related to leaving BHI); APP-0096 (Ross Glover Depo. at 59:9-23) (testifying that Ken Loynes, BHI's President, sent a group text message firing employees, including the Individual Defendants).

Dkt. No. 77 at 6-9 (cleaned up).

In reply, BHI argues that,

[i]nstead of taking responsibility for their actions, Defendants focus their Response on BHI's preservation efforts. BHI's efforts, however, are not at issue before this Court. Indeed, it is BHI's Motion for Sanctions for Spoliation of Evidence ("Motion") based on Defendants' outright admissions to destruction of evidence that pending adjudication. Defendants submit several self-serving declarations in their Response

-12-

to avert the truth established during depositions. The record establishes that Defendants destroyed evidence after receipt of BHI's preservation notices, after BHI filed the instant lawsuit, and assuring BHI that they had produced all relevant information. Defendants' destruction of evidence is consistent with their unfulfilled discovery obligations, namely their admittedly inadequate search for and production of responsive information, which evidences Defendants' bad faith intent to conceal information.

Dkt. No. 177 at 1.

## Legal Standards

The loss of electronically stored information ("ESI") is governed by Federal Rule of Civil Procedure 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     (A) presume that the lost information was unfavorable to the party;
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>     (C) dismiss the action or enter a default judgment."

FED. R. CIV. P. 37(e); *accord Castro v. Wal-Mart Real Estate Bus. Trust*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022).

"To apply Rule 37(e) sanctions, a court must determine that the following four predicate elements exist: (1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced" through additional

discovery. *Cleary v. Am. Airlines, Inc.*, No. 4:21-cv-184-O, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022) (cleaned up).

As to the first predicate element, "[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *accord Falkins v. Goings*, No. CV 21-1749, 2022 WL 17414295, at *3 (E.D. La. Dec. 5, 2022) (explaining that Rule 37(e) "does not create a new duty; instead, it is based on a common law duty to preserve relevant information when litigation is reasonably foreseeable, so courts should consider whether and when the duty to preserve arose"); FED. R. CIV. P. 37(e), advisory committee notes, 2015 amendments ("Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve arises."). "When the duty arises, even information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted." *Ringers Techs. LLC v. Harmer*, No. 4:18-CV-4347, 2020 WL 6385813, at *2 (S.D. Tex. Aug. 17, 2020), *rep. & rec. adopted*, 2020 WL 6384349 (S.D. Tex. Oct. 30, 2020).

If these four predicate elements exist, the Court then turns to the matter of possible remedies under Rules 37(e)(1) or 37(e)(2), which "have different requirements before sanctions can be imposed and can lead to different sanctions." *Richard v. Inland Dredging Co.*, LLC, No. 6:15-0654, 2016 WL 5477750, at *3 (W.D. La. Sept. 29, 2016).

Reading these subdivisions together, Rule 37(e)

- allows courts, under Rule 37(e)(2), "to impose certain severe sanctions for the intentional failure of a party to preserve relevant ESI, but only after a finding that the party 'acted with the intent to deprive another party of the information's use in the litigation,'" and

- "[i]f the court does not find that the spoliating party acted with an intent to deprive, but determines that the loss of ESI prejudiced another party," allows courts, under Rule 37(e)(1), to "impose lesser sanctions in the form of 'measures no greater than necessary to cure the prejudice.'"

*Castro*, 645 F. Supp. 3d at 646 (citing FED. R. CIV. P. 37(e); cleaned up).

"'Prejudice' under Rule 37(e) means that a party's ability to obtain the evidence necessary for its case has been thwarted." *DR Distributors*, 513 F. Supp. 3d at 981; *see also J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 2324488, at *6 (E.D. Mich. May 30, 2019) ("'Prejudice' can be properly understood as a party's ability to obtain the proofs necessary for its case.... which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." (cleaned up)), *rep. & rec. adopted*, 2019 WL 2296913 (E.D. Mich. May 30, 2019).

The United States Court of Appeals for the Fifth Circuit recently explained, by quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010), that "[a] party suffers prejudice where it cannot present 'evidence essential to its underlying claim.'" *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 575

(5th Cir. 2020). The *Victor Stanley* court had further explained that "[p]rejudice can range along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof" and that, "[g]enerally, courts find prejudice where a party's ability to present its case or to defend is compromised." 269 F.R.D. at 532 (cleaned up; quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)); *accord Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011).

Rule 37(e)(1) "does not contain an 'intent' requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith." *Richard*, 2016 WL 5477750, at *4; *accord Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2019 WL 330865, at *4 (S.D. Fla. Jan. 25, 2019) ("Intent to deprive is not a prerequisite for obtaining relief under Rule 37(e)(1). The Rule itself makes that distinction clear, and the case law recognizes the obvious difference.").

Under Rule 37(e)(1), after finding prejudice to another party from loss of the ESI, "[a] curative measure recognized by the Advisory Committee notes is barring evidence" – that is, "forbidding the party that failed to preserve information from putting on certain evidence." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958 (N.D. Ill. 2021) (cleaned up).

And "[a] common curative measure courts impose is instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Id.* The Rules Advisory Committee explained in its notes to the 2015 amendments to Rule 37(e) that "[s]ubdivision (e)(2) applies to jury instructions that permit or require the jury to

presume or infer that lost information was unfavorable to the party that lost it" and "covers any instruction that directs or permits the jury to infer from the loss of information that it was in fact unfavorable to the party that lost it" but "does not apply to jury instructions that do not involve such an inference." FED. R. CIV. P. 37(e), advisory committee notes, 2015 amendments. As another court has explained,

> subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. These measures, which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice. In addition, subdivision (e)(2) does not limit the discretion of courts to give traditional missing evidence instructions based on a party's failure to present evidence it has in its possession at the time of trial.

*Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 1704109, at *7 (N.D. Ill. Mar. 23, 2018) (quoting FED. R. CIV. P. 37(e), advisory committee notes, 2015 amendments).

"Courts also routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort necessary to bring the issue of spoliation before the court." *BalanceCXI, Inc. v. Int'l Consulting & Rsch. Grp., LLC*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *15 (W.D. Tex. Nov. 24, 2020) (footnote omitted), *rep. & rec. adopted*, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021); *accord Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-cv-2025-K-BN, 2023 WL 2699511, at *10 & n.1 (N.D. Tex. Feb. 15, 2023).

Under Rule 37(e)(2), "however, before a Court can impose the sanction of an adverse presumption, an adverse instruction to the jury, or default judgment, it must

-17-

find that the party that caused the loss 'acted with the intent to deprive another party of the information's use in the litigation'" – and "a finding of negligence or gross negligence" will not suffice to justify "the giving of an adverse-inference instruction." *Richard*, 2016 WL 5477750, at *4 (cleaned up; citing FED. R. CIV. P. 37(e), advisory committee notes, 2015 amendments).

But, "when the court finds that a party acted with the intent to deprive," Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information." *Falkins*, 2022 WL 17414295, at *3.[1] Some courts have explained that, "[i]f intent is established, then prejudice is presumed," *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 622 (N.D. Ill. 2022), or "inferred," *CaramelCrisp LLC v. Putnam*, No. 19 C 2699, 2022 WL 1228191, at *5 (N.D. Ill. Apr. 26, 2022); *accord Adler*, 2023 WL 2699511, at *10 n.3 (collecting cases).

---

[1] *Accord* FED. R. CIV. P. 37(e), advisory committee's notes to 2015 amendments ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice."); *DR Distributors*, 513 F. Supp. 3d at 958-59, 980 ("If intent (which presumes prejudice) exists, then the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default. FED. R. CIV. P. 37(e)(2). …. Intent must be established before a court can impose sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2). FED. R. CIV. P. 37(e), advisory committee's notes to 2015 amendments. If intent is established for these sanctions, prejudice need not be separately established because prejudice is assumed from the intent."); *Ringers*, 2020 WL 6385813, at *2.

As explained above, where, as here, Rule 37(e) governs a motion for sanctions for spoliation of ESI, Rule 37(e)(2) requires a "finding that the party acted with the intent to deprive another party of the information's use in the litigation" before a court can sanction the spoliating party by "instruct[ing] the jury that it may or must presume the information was unfavorable to the party," FED. R. CIV. P. 37(e)(2), or what is referred to in short hand as an "adverse inference instruction," *Bellamy v. Wal-Mart Stores, Tex., LLC*, No. SA-18-CV-60-XR, 2019 WL 3936992, at *5 (W.D. Tex. Aug. 19, 2019); *accord Falkins*, 2022 WL 17414295, at *3.

For many years, decisions of the United States Court of Appeals for the Fifth Circuit have held that courts may impose such "an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'" *Guzman*, 804 F.3d at 713. But, as another judge has noted,

> [i]t is not clear that a finding of "bad faith" is required under Rule 37(e)(2). Before the 2015 amendment to the rule, the Fifth Circuit generally "permit[ted] an adverse inference against the destroyer of evidence only upon a showing of bad faith or 'bad conduct.'" *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The 2015 version of Rule 37(e) does not mention "bad faith" and instead requires a showing that the party at fault acted with the "intent to deprive another party of the information."

*BalanceCXI*, 2020 WL 6886258, at *12 n.8.

After the 2015 amendments, outside the ESI context in which Rule 37(e) governs, "it appears that in the Fifth Circuit a court may use its inherent authority to sanction a party for the loss or destruction of non-ESI, but sanctions can only be assessed upon a showing of 'bad faith' or 'bad conduct.'" *Bellamy*, 2019 WL 3936992, at *6 (citing *Guzman*, 804 F.3d at 713)); *accord Van Winkle v. Rogers*, 82 F.4th 370,

-19-

374-79 (5th Cir. 2023) (applying standards from *Guzman* and earlier case law to alleged spoliation of non-ESI); *Coastal Bridge*, 833 F. App'x at 573-75 (same).

But, as to spoliation of ESI, "[a]s one district judge has noted, since the adoption of Rule 37(e)(2), the Fifth Circuit has not clarified whether its prior spoliation jurisprudence has been abrogated or otherwise amended pursuant to the amendment of Rule 37(e)." *BalanceCXI*, 2020 WL 6886258, at *12 n.8 (cleaned up).[2] Instead, the Fifth Circuit's recent decisions citing or applying amended Rule 37(e) have laid out the "bad faith" and Rule 37(e)(2) "intent to deprive" standards together.[3]

---

[2] *See also* Fed. R. Civ. P. 37(e), advisory committee notes, 2015 amendments ("New Rule 37(e) replaces the 2006 rule. It authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used. …. The new rule applies only to electronically stored information, also the focus of the 2006 rule."); *see generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. …. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co.*, 383 F.3d 249, 252 (5th Cir. 2004) (explaining that "we are bound to follow the prior panel rulings of this court" but that "[t]his rule is inapplicable … where Congress makes a change in statutory law that directly affects a prior panel opinion").

[3] *See Miller v. Michaels Stores, Inc.*, ___ F.4th ___, No. 23-30393, 2024 WL 1461358, at *5 (5th Cir. Apr. 4, 2024) ("'Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence.' *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023) (quoting *Guzman*, 804 F.3d at 713). If spoliation is found, and was done in bad faith, the district court may permit the factfinder to draw the inference that the spoliator destroyed or altered the evidence because it was unfavorable. *Id.* 'Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence.' *Id.*; *see also* Fed. R. Civ. P. 37(e)(2)(B) (if party 'acted with the intent to deprive another party of [electronically-stored]

And that suggests that, for ESI spoliation, these standards overlap or even are interchangeable. *Accord United Healthcare Servs., Inc. v. Next Health LLC*, No. 3:17-cv-243-X-BT, 2023 WL 2589237, at *5 (N.D. Tex. Mar. 21, 2023); *Adler*, 2023 WL 2699511, at *12 n.6 (collecting cases).

But any lack of clarity will generally make no difference in how the Court applies the governing standard for a requested adverse-inference instruction sanction for spoliation of ESI. The Fifth Circuit has held that "[b]ad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence,"

_____

information's use in the litigation,' district court may permit an adverse inference)."); *Ford v. Anderson Cnty., Tex.*, 90 F.4th 736, 767-68 (5th Cir. 2024) ("This court permits an adverse inference or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.' [*Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)] (quoting *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)). A party seeking an adverse inference – i.e., a presumption that 'the lost information was unfavorable to the [spoliating] party' – must establish that 'the [spoliating] party acted with the intent to deprive another party of the information's use in the litigation.' FED. R. CIV. P. 37(e)(2)."); *Eagan v. Walgreen Co.*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022) ("Spoliation is 'the destruction or the significant and meaningful alteration of evidence.' Sanctions are only appropriate on a showing of bad faith. Bad faith 'generally means destruction for the purpose of hiding adverse evidence.' For electronically stored information, an adverse inference may be given to the jury 'only upon [a] finding that the party acted with the intent to deprive another party of the information's use in the litigation.' If the trial court concluded there was 'prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" (cleaned up)); *cf. Calsep A/S v. Dabral*, 84 F.4th 304, 312 n.8 (5th Cir. 2023) ("We note that there are overlapping standards at play – Rule 37 and the heightened standard for default sanctions both require some finding of bad faith. .... Rule 37(e), too, requires 'willfulness or bad faith,' which may be satisfied when a party 'fail[s] to comply with [a] court's discovery order even after he was personally instructed to do so,' or 'by a repeated failure to provide anything other than generalized or non-responsive answers in response to specific requests for compliance by the court.' *See Bell v. Texaco, Inc.*, 493 F. App'x 587, 593 (5th Cir. 2012) (per curiam) (citations and quotation marks omitted). But here we have no need to consider whether, and how, these various frameworks may differ.").

*Guzman*, 804 F.3d at 713, and that "[m]ere negligence is not enough to warrant an instruction on spoliation," *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (cleaned up). "Those standards overlap with Rule 37(e)(2)'s requirement of an 'intent to deprive another party of the information's use in the litigation.'" *Adler*, 2023 WL 2699511, at *12 (cleaned up); *accord id.* at *12 n.5 (collecting cases).

"The party seeking the spoliation sanction bears the burden of proof." *Castro*, 645 F. Supp. 3d at 646. And, because (for the reasons that the Court has previously explained), "there is 'no basis in Rule 37(e) or governing case law to conclude [a movant seeking sanctions for ESI spoliation] must make any showing on clear and convincing evidence,' '[t]he Court instead will assess [the movant's] required showings under Rule 37(e) against the preponderance of the evidence standard.'" *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-cv-1547-L-BT, 2024 WL 1252365, at *5 (N.D. Tex. Mar. 21, 2024) (quoting *Adler*, 2023 WL 2699511, at *5; cleaned up).

Following the 2015 Advisory Committee notes, courts have observed that amended Rule 37(e)(1) "leave[s] to the Court's discretion determining which party has the burden of proving prejudice." *Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *8 (W.D. Tex. Nov. 8, 2018). Here, the Court determines that the burden to prove prejudice should lie with BHI, where, at this stage of the case and in light of the parties' briefing, "placing the burden of proving prejudice on the party that did not lose the information [is not] unfair" in this case. *Id.* at *7 (cleaned up).

"To determine whether a referred motion for sanctions is dispositive or non-dispositive, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether [Federal Rule of Civil Procedure] 72(a) or 72(b) applies." *Siegel v. Compass Bank*, No. 3:18-cv-1023-X, 2021 WL 4498914, at *1 (N.D. Tex. Jan. 11, 2021) ("To allow otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review.") (cleaned up); *accord Adler*, 2023 WL 2699511, at *14 n.8 (collecting cases). And, so, the undersigned has authority to enter a nondispositive order granting attorneys' fees or other nondispositive sanctions under Federal Rule of Civil Procedure 37(e) or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A June 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

## Analysis

To begin, the Court agrees with BHI that Defendants cannot properly point to BHI's alleged failures to preserve as an excuse for what Defendants did or did not do as to their own discovery obligations, including in response to BHI's requests.

Focusing, then, on BHI's allegations of spoliation by Defendants, the Court, to grant BHI's motion, would need to determine that the four predicate elements exist: (1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the

ESI was lost because of a party's failure to take reasonable steps to preserve it; and

(4) the ESI cannot be restored or replaced through additional discovery.

And BHI's request for an order imposing as sanctions either striking Defendants' defenses in this action and entering judgment in BHI's favor on all counts or ordering an adverse inference instruction all fall within Rule 37(e)(2)'s scope, requiring that the Court find that Defendants acted with the intent to deprive BHI's of the lost ESI's use in this litigation.

As the Court has previously explained,

> under Rule 37(e)(2), the Court cannot infer that a "party acted with the intent to deprive another party of the [ESI's] use in the litigation" based only on evidence that amounts to what is required to satisfy the four predicate elements – that is, showing that ESI that should have been preserved has been lost because of a party's failure to take reasonable steps to preserve it and now cannot be restored or replaced through additional discovery….
>
> Another court has similarly rejected an argument that, under Rule 37(e)(1), the moving party was prejudiced because the lost ESI is relevant and cannot be restored or replaced. As that court explained, [t]his assertion overlooks the construction of Rule 37(e) which requires that the four predicate elements, including relevancy and the inability to be restored or replaced, be found before a court can consider prejudice. If [a moving party] were correct that the existence of lost evidence which is relevant and which cannot be replaced means there is prejudice, it would be unnecessary for Rule 37(e) to require a court to find the four predicate elements before a court could find prejudice and order measures to cure the prejudice under Rule 37(e)(1).
>
> So, too, if the required "intent to deprive" could be inferred by facts that offer only what is necessary to find that the four predicate elements exist, there would be no need for Rule 37(e)(2) to require its own, more stringent showing for a party to be entitled to the most severe spoliation sanctions. And, because a finding under Rule 37(e)(2) that a "party acted with the intent to deprive another party of the [ESI's] use in the litigation" eliminates the need to separately find (or allows a court to automatically infer or presume) prejudice, inferring the necessary intent to deprive from nothing more than the set of facts that the four

predicate elements require would read both subdivisions (e)(1) and (e)(2) out of Rule 37(e).

*Adler*, 2023 WL 2699511, at *29 (cleaned up).

But all of BHI's support for its requested sanctions amount to evidence and arguments that (1) Defendants have failed to conduct a thorough search for relevant information responsive to BHI's discovery requests; (2) Defendants' witnesses testified that their personal electronic devices were not preserved or searched for relevant information and that some deleted or destroyed text messages that BHI contends were relevant to and would have supported BHI's claims; and (3) Defendants failed to preserve, search for, collect, or produce this evidence despite having knowledge of this lawsuit and Defendants' receipt of BHI's preservation notices and after assuring BHI that they had produced all relevant information. *See* Dkt. No. 167.

According to BHI, "[s]everal witnesses – including the individual Defendants and representatives of the corporate Defendants – testified that their devices were not searched, there is relevant information on those devices, and that information has since been destroyed." *Id.* at 14; *see also* Dkt. No. 177 at 1 ("The record establishes that Defendants destroyed evidence after receipt of BHI's preservation notices, after BHI filed the instant lawsuit, and assuring BHI that they had produced all relevant information. Defendants' destruction of evidence is consistent with their unfulfilled discovery obligations, namely their admittedly inadequate search for and production of responsive information, which evidences Defendants' bad faith intent to conceal information.").

From these assertions, BHI contends that "Defendants' conduct clearly suggests Defendants' intent to conceal information relevant to BHI's claims, preventing BHI from discovering and presenting such evidence to prove or support its claims and fully assess its damages," and that "Defendants destroyed the evidence in this case in bad faith." Dkt. No. 167 at 1-2, 3; *see also* Dkt. No. 177 at 6 n.4 ("BHI does not contend that Hoffman deleted any text messages. BHI simply believes Defendants' utter failure to search Hoffman's emails, text messages, or personal devices despite their clear relevancy to this case, supports BHI's overall contention that Defendants are acting willfully and intentionally to hide and destroy evidence in this case.").

Defendants respond that "BHI is unable to show that a single document relevant to this action has been lost or deleted, and there is thus no evidence of spoliation," and that BHI has not pointed "to any evidence suggesting that Haynes's or Hoffman's cellphones contained relevant information or that relevant information was deleted." Dkt. No. 174-1 at 1, 10-11 (cleaned up).

And Defendants contend that, even if any text messages or documents were deleted, "there is no evidence that any of those text messages were lost in bad faith" or "with an intent to deprive BHI of those text messages" or "that Coble deleted any documents in bad faith" or any evidence "of bad faith deletion of any documents by Walker" and that, "even if Haynes or Hoffman had relevant text messages (they did not) and even if they deleted their text messages in bad faith (again, they did not), BHI was not prejudiced because it could have obtained the same information from

other sources – specifically the counterparties to the text messages." *Id.* at 11-12, 13-15, 16.

And, Defendants argue, "[c]omplaints about Defendants' searches of emails is an issue for a motion to compel, and the motion to compel deadline has long passed." *Id.* at 18.

The Court agrees with Defendants.

Based on Defendants' response, *see* Dkt. Nos. 174-1 & 174-3, the Court cannot find that the text messages at issue are lost or cannot be restored or replaced, *cf. Manson v. B&S Trucking of Jackson, LLC*, No. SA-21-CV-01181-XR, 2023 WL 3170494, at *3 (W.D. Tex. May 1, 2023) ("Rules are written to capture most scenarios, but regrettably cannot be written to address all instances. Here the Plaintiff had an expectation that driver logs would be maintained and kept by a motor carrier, and they were not. In any event, until it is shown that the driver logs have indeed been lost, any relief under Rule 37(e) is premature."). That Defendants did not search the senders' or recipients' phones or search certain imaged cell phone data does not establish that prerequisite for Rule 37(e) sanctions. And BHI's failure to timely move to compel that discovery is a separate issue that the Court has already addressed. *See* Dkt. No. 163; *cf. Miller v. Michaels Stores, Inc.*, No. 23-30393, 2024 WL 1461358, at *6 (5th Cir. Apr. 4, 2024) ("Yet, because Miller moved in the district court for an adverse inference based on spoliation, rather than to compel production of the remainder of the footage, her right to receive that footage was never properly before the district court. There is no evidence that spoliation occurred." (cleaned up)).

But, even if BHI had made those required showings, the Court finds that BHI has not made the required Rule 37(e)(2) showing of intent or, assuming it is also or alternatively required, any required showing of bad faith. In reply, BHI effectively summarizes its position and arguments that, "[t]hroughout discovery, Defendants made several representations to BHI that their production was complete which were not accurate"; "Defendants have failed to preserve several sources of data, decided not to search sources they did preserve, and … went so far as to delete text messages despite being on clear notice to preserve relevant information"; and therefore the Court should find that "Defendants have acted in bad faith with respect to their discovery obligations and have spoliated evidence with intent to hide and destroy relevant evidence." Dkt. No. 177 at 10.

But all of what BHI asserts, even it were established, amounts a showing that Defendants failed to take reasonable steps to preserve, search for, or produce relevant text messages that now cannot be restored or replaced through additional discovery. And that amounts to the set of facts that Rule 37(e)'s four predicate elements require. *See Adler*, 2023 WL 2699511, at *29.

And the Court finds, under the circumstances and based on the evidence of record, that any of the Individual Defendants' or other individuals' deleting text messages (including as an individual's routine practice) or giving up or restoring factory settings on a cellphone and Defendants' counsel's representations that document production was complete does not, alone or in combination with BHI's other

arguments and evidence, support an inference that Defendants acted with the intent to deprive BHI of the allegedly lost ESI's use in this litigation.[4]

Finally, even if the Court were to consider less severe sanctions than those subject to Rule 37(e)(2), BHI cannot, under Rule 37(e)(1), point only to the existence of lost evidence that is relevant and that cannot be replaced to make the required showing that BHI suffered prejudice from loss of the information. *See Adler*, 2023 WL 2699511, at *29. And, considering BHI's failure to timely move to compel, the Court cannot find the required showing of prejudice in light of BHI's own failure to timely pursue other means of seeking to restore or replace the allegedly lost text messages. *See* Dkt. No. 163.

### Conclusion

The Court denies Plaintiff BHI Energy I Power Services, LLC's Motion for Sanctions for Spoliation of Evidence [Dkt. No. 166].

SO ORDERED.

---

[4] *Cf. Ford*, 90 F.4th at 768 ("Because the Texas Rangers conducted an investigation following Newsome's death, it may be reasonable to conclude that Defendants had a duty to preserve electronically stored information. It also seems likely that the text messages at issue contained information related to Newsome. Nevertheless, Plaintiffs are unable to effectively rebut Defendants' explanation that they purchased new phones and, as a result, lost access to these text messages."); *Malone v. Cooke Ins. Ctr., Inc.*, No. 3:22-CV-35-SA-JMV, 2024 WL 1337196, at *5 (N.D. Miss. Mar. 28, 2024) ("The Court acknowledges that it is somewhat unusual for a party to initially fail to mention the possible existence of video, at times represent that he has a video but is technologically unable to retrieve it, and at other times represent that he did not record a video at all. However, for an adverse inference to appropriately be applied against Malone, the Defendants must point to evidence that he in bad faith destroyed the video. The Defendants ask the Court to infer that Malone destroyed the video, but there is no evidence before the Court suggesting that Malone intentionally did so." (cleaned up)).

DATED: April 12, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE